UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KIMBERLY SUE LOPEZ, as Next Friend of Minor Child, B.P.L.A., | ) ) ) | |
| Plaintiff, | ) ) | 24-cv-13340 |
| v. | ) ) | Judge Matthew F. Kennelly |
| JOAN M. KUBALANZA, *et al*, | ) ) | Magistrate Judge Jeffrey Cole |
| Defendants. | ) ) | |

**MICHAEL OCHOA, JAMES HAGLER AND ANDREY FILIPOWICZ'S
REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

The Defendants, Michael Ochoa, James Hagler and Andrey Filipowicz, through counsel, Daniel B. Meyer of Meyer Law Group LLC, state as follows in support of their Motion to Dismiss Kimberly Sue Lopez's Complaint for Violation of Constitutional Rights pursuant to Federal Rules of Civil Procedure 12(b)(1) and (b)(6):

Lopez's Responses (Dkts. 100 and 112) do not cure the Complaint's Rule 12(b)(6) deficiencies.[1] Considering the Complaint and the Responses together, they do not plausibly allege a conspiracy between the Leving Defendants and any state actor so as to bring the Leving Defendants within Section 1983's "under color of state law" purview. That issue aside, the Complaint and Responses do not plausibly allege that, through some act or omission, the Leving Defendants deprived Lopez of any federal or state constitutional or statutory right. For these

---

[1] On March 14 2025, Lopez filed her first Response (forty-one single-spaced pages) in opposition to the Defendants' Motions to Dismiss. Dkt. 100 ("First Response"). Later that day, the Court ordered the Defendants to file their Replies by April 8 2025. Dkt. 102. On April 7 2025, Lopez filed a motion requesting leave to file another Response (Dkt. 111) and a motion requesting leave to file that Response using pages in excess of fifteen (Dkt. 111-1). Before the Court ruled on those motions, Lopez filed her second Response (eighty-two double-spaced pages) in opposition to the Defendants' Motions to Dismiss. Dkt. 112 ("Second Response"; the First and Second Responses collectively, "Responses").

1

reasons, and the Rule 12(b)(1) jurisdictional issues addressed in the State Defendants' briefs, the Leving Defendants ask the Court to dismiss them from this case.[2]

### I. COMPLAINT, MOTION TO DISMISS & RESPONSES

As it relates to the Leving Defendants, the Complaint alleges just two things. First, it alleges that "the Jefferey Leving Firm" conspired with other Defendants (Marshall; Shalabi; Abuzerr; Nolan; Antoniolli, Labraco; Stevenson; Muhammad; Knight; Finn; Vasalakos) "to violate more than one of Plaintiff and B.P.L.A's civil rights and failed to provide B.P.L.A. with needed medical care. Dkt. 1, ¶ 4.

Second, it alleges that the Leving Defendants (who represented Lopez in the Underlying Action from March 2022 to March 2023) (a) told Lopez to not worry about an order of protection, and (b) after she terminated their attorney-client relationship, attended a hearing that was supposedly "in regard to being in violation of" Illinois Supreme Court Rule 13" (which, amongst other things, sets forth the means by which an attorney withdraws from representing a party in litigation), all while purportedly "Acting Under Color of State Law." Dkt. 1, ¶ 10.

In their Motion to Dismiss, the Leving Defendants maintain that these allegations are insufficient to support the legal conclusion that they were "acting under color of state law" such that they might be subject to Section 1983 claims, or to state claims that the Leving Defendants violated the federal and state law rights Lopez asserted in the Complaint.

The First Response adds two new factual allegations relative to the Leving Defendants. It alleges that "Mr. Finn also failed to notify the [Underlying] Court that he believed Mr. Latif 'paid the judge off', and that during an in-person meeting Mr. Latif and him nearly had a fistfight with

---

[2] Filed contemporaneously with this Reply is a matrix identifying the Defendants and the arguments made in all Motions to Dismiss, indicating which Defendants made or joined which arguments. The matrix is believed by the undersigned to be accurate as of the date and time this Reply is filed.

each other, which vacated the in-person hearing. Judge Jackson, Mr. Marshall, Mr. Ochoa, Mr. Hagler, and Mr. Filipowicz were all notified about this dangerous, concerning behavior." Dkt. 100, p. 7.

The First Response then alleges that the "state court record reveals troubling indications of bias and conflict of interest. Plaintiff's private attorneys Sarah Nolan, Russell Knight, James Hagler, Andrey Filipowicz and Michael Ochoa failed to protect Plaintiff's constitutional rights during these unlawful proceedings." Dkt. 100, p. 8. The First Response does not otherwise mention any of the Leving Defendants by name or by some collective nomenclature.

The Second Response again alleges that the Leving Defendants (through Ochoa) attended a court hearing in March 2023, wherein they carried out Lopez's termination of the attorney-client relationship by withdrawing as her lawyers in accord with Illinois Supreme Court Rule 13. Dkt. 112, p. 25. The Second Response further – and again – alleges that Lopez's "private attorneys," including the Leving Defendants, failed to adequately protect her constitutional rights. Dkt. 112, p. 26. The Second Response does not otherwise accuse the Leving Defendants of doing, or failing to do, anything else.

## II.     RULE 12(b)(1) ARGUMENT

The Leving Defendants adopt and incorporate herein the *Rooker-Feldman* abstention, *Younger* abstention and domestic-relations exception arguments made in the State Defendants' and the Stevenson/Antoniolli Defendants' Replies.

## III.    RULE 12(b)(6) ARGUMENT

The Responses do nothing to undermine the Leving Defendants' Motion to Dismiss. The new allegations do not plausibly support a legal conclusion that the Leving Defendants were "acting under color of state law" so as to bring them within the reach of Section 1983, nor do the

3

new allegations establish plausible claims against the Leving Defendants for purported violations of Lopez's federal and state law rights.[3]

### A. The Complaint And Responses Do Not Plausibly Allege That The Leving Defendants Acted "Under Color Of State Law."

Taken together, the Complaint and Responses do not plausibly allege that the Leving Defendants acted under color of state law. The Leving Defendants are thus not subject to Section 1983 liability, and Counts I through IV of the Complaint should be dismissed as against them.

A Section 1983 claim hinges upon a federal right being deprived "under color of state law." Spiegel v. McClintic, 916 F.3d 611, 616 (7th Cir. 2019). Generally stated, one acts "under color of state law" when one is a state actor, or when one is a private actor who conspires with a state actor. *Id*. To plausibly plead Section 1983 liability by conspiracy, a complaint must allege two things: an understanding between the private actor and state actor to deprive the plaintiff of a federal right, and the private actor being a willful participant in joint activity with a state actor that effectuated that deprivation. Fries v. Helsper, 146 F.3d 452, 457 (7th Cir. 1988).

The Leving Defendants are private actors. Dkt. 1, ¶ 10(e); Dkt. 100, p. 8 ("Plaintiff's private attorneys Sarah Nolan, Russell Knight, James Hagler, Andrey Filipowicz and Michael Ochoa…"). They are thus subject to Section 1983 liability only if the Complaint and Responses plausibly plead they conspired with state actors, more particularly that they came to some

---

[3] Lopez pleads for leniency on the notion that she is a *pro se* plaintiff. While no counsel has filed an appearance on her behalf, her status as a true *pro se* party is questionable. The tone and structure of her filings suggest professional legal assistance, as do some of the actual words and phrases found in her Responses. For example, in the Second Response, someone wrote "your case belongs in federal court" (Dkt. 112, p. 4) and "Here is your Substantive Due Process argument refined into a concise, clearly structured form" (Dkt. 112, p. 54), which sound like things a third-party wrote in a memorandum sent to Lopez. Moreover, large swaths of the First Response read like an internal memorandum an associate might draft for a partner's consideration. There are too many examples of this to address in this footnote but a notable one: the author of the First Response "presumes" that Justices Hyman, Tailor and Walker were the appellate panel assigned to one of her appeals and then wonders why they are Defendants. Dkt. 100, p. 19. Certainly, Lopez herself knows what role the Justices played in the Underlying Action and why she named them as Defendants. The author does not know these things. *Ergo*, Lopez and the author are not the same person and Lopez is receiving assistance and advice from undisclosed legal counsel.

4

"understanding" with state actors to deprive Lopez of a federal right, and willfully participated in joint activity with that state actor.

The Responses recognize these requirements (Dkt. 100, pp. 23-25; Dkt. 112, p. 49), but do nothing to buttress the Complaint's deficiencies in these regards. The Responses do not even mention the Leving Defendants when addressing these issues. As it is, the sum-total of the allegations against the Leving Defendants are these: they told Lopez to not worry about an order of protection; they appeared at a court hearing to withdraw as her attorneys because she fired them; they received notice that one of the judges presiding over the Underlying Action had purportedly been bribed, and/or notice of an almost-fistfight; and they failed to protect Lopez's constitutional rights during the purportedly unconstitutional Underlying Action.

Nowhere in these allegations do the Complaint and Responses allege (a) the identity of the state actor with whom the Leving Defendants had an understanding, (b) the nature of that understanding, (c) which of Lopez's federal rights was targeted for deprivation by any such understanding, or (d) some act by any one of the Leving Defendants constituting willful participation in joint activity with a state actor to deprive Lopez of a federal right.

To be sure, the Complaint and Responses draw the legal conclusions that the Leving Defendants were acting under color of state law, and that they conspired with other defendants, but drawing those legal conclusions without supporting them with enough facts to state a claim that is plausible on its face is not sufficient. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Rather, "surviving a Rule 12(b)(6) motion requires more than labels and conclusions;" the factual allegations must "raise a right to relief above the speculative level." Pugh v. Tribute Co., 521 F.3d 686, 699 (7th Cir. 2008).

The Complaint and Responses, taken together, do not plausibly allege a conspiracy

5

between the Leving Defendants and any state actor that would bring them within the purview of Section 1983. Without that, the Complaint's Section 1983 causes of action against the Leving Defendants, set forth in Counts I through IV. fail and should be dismissed.

**B.  The Complaint And Responses Do Not Plausibly Allege Any Cause Of Action Against The Leving Defendants.**

The question of whether the Leving Defendants acted "under color of state law" aside, the Complaint, now supplemented by the Responses, does not plausibly allege any cause of action against the Leving Defendants.

In Count I, the Complaint contends (and the Responses (Dkt. 100, pp. 27-31; Dkt. 112, pp. 53-65) attempt to explain) that Lopez's Fourteenth Amendment rights under the Due Process and Equal Protection Clauses have been violated. What the Complaint and Responses fail to do is explain how anything the Leving Defendants did or failed to do either violated those rights, or caused the deprivations.

Count II and the Responses (Dkt. 100, pp. 31-32; Dkt. 112, pp. 53-65) contend that Lopez's First Amendment rights were violated by restricting her access to the Illinois state courts, primarily her ability to appeal circuit court decisions to the Illinois Appellate Court. However, the Complaint and Responses fail to allege any act or omission by the Leving Defendants that restricted her access to the Illinois state courts.

Count III and the Responses (Dkt. 100, pp. 32-33; Dkt. 112, pp. 65-66) contend that Lopez was denied counsel in relation to an indirect criminal contempt hearing in violation of the Sixth Amendment, but they fail to establish what the Leving Defendants did (or failed to do) to deny her a right to counsel.

Count IV and the Responses (Dkt. 100, pp. 33-34; Dkt. 112, p. 66) complain that Lopez was subjected to excessive fines or penalties (and hint that the removal of her daughter from

Lopez's home might even constitute an "extreme sanction" (Dkt. 100, p. 33)) in violation of the Eighth Amendment. Both documents fail to establish that the Leving Defendants imposed any fine or penalty on her, or that they had anything to do with the December 2020 loss of custody (the Lopez-Leving attorney-client relationship did not even begin until March 2022).

Count VI and the Responses (Dkt. 100, pp. 35-37; Dkt. 112, pp. 67-69) contend a violation of the Americans with Disabilities Act, but the Complaint and Responses fail to allege that she ever requested an accommodation from the Leving Defendants, or that they ever denied her one.

As it relates to potential state-law claims, the Leving Defendants join the State Defendants' briefs on the topic, but elucidate further regarding the relationship between the state law claims and the Leving Defendants. The First Response suggests the possibility of a claim for intentional infliction of emotional distress, stating that "taking a child wrongfully from a mother is textbook extreme and outrageous beyond bounds of decency." Dkt. 100, p. 39. However, the Complaint alleges that Lopez's daughter was removed from Lopez's home in December 2020. Dkt. 1, ¶ 13. Given that the attorney-client relationship between Lopez and the Leving Defendants did not commence until approximately fifteen months later (March 2022; Dkt. 74-6), the Complaint cannot plausibly be construed as the Leving Defendants having been involved in "taking a child wrongfully from a mother."

Relative to the Second Response:

- It contends that Illinois constitutional due process and equal protection guarantees mirror the federal constitutional guarantees. Dkt. 112, pp. 69-70 Nonetheless, neither the Complaint nor the Responses set forth allegations sufficient to state claims against the Leving Defendants based on Illinois constitutional deprivations, for all the same reasons that Lopez's pleadings do not state claims of federal deprivations against the Leving Defendants.

- It contends that the Complaint pleads fraud claims. Dkt. 112, p. 70. To plead fraud under Illinois law, a plaintiff must plead facts supporting the following elements: (a) a false statement of material fact; (b) known or believed to false by the person

7

- making it; (c) an intent to induce the plaintiff to act; (d) action by the plaintiff in justifiable reliance on the truth of the statement; (e); proximately caused damages. Lewis v. Lead Indus. Ass'n, 2020 IL 124107, ¶ 30. The Complaint and the Responses do not allege that the Leving Defendants made a false statement, and do not allege facts to support the other elements of such a claim.

- It references Illinois's constitutional bail provision and the SAFE-T Act, which appear to relate to Lopez's Eighth Amendment claim. Dkt. 112, pp. 70; 77-78. As discussed above, Lopez has not alleged facts against the Leving Defendants sufficient to state an Eighth Amendment claim.

- In addition to the aforementioned intentional infliction of emotional distress claim, the Second Response references "abuse of process." Dkt. 112, pp. 70-71. An abuse of process claim requires a plaintiff to plead (a) the existence of an ulterior motive or purpose, and (b) the misuse of legal process to accomplish a purpose outside the scope of the process itself. Kumar v. Bornstein, 354 Ill. App. 3d 159, 165 (2nd Dist. 2004). The Complaint and Responses do not allege that the Leving Defendants misused any process, much less did so with an ulterior motive or purpose.

- The Second Response also contends a misuse of "Title IV-D Enforcement." Dkt. 112, pp. 71-77. However, none of the things the Leving Defendants did or failed to do amount to them misusing the Title IV-D enforcement process.

## IV.     CONCLUSION

"It is by now well established that a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." Swanson v. Citibank, N.A., 614 F.3d 400, 403 (7th Cir. 2010). Over the course of a twenty-five-page single-spaced Complaint, a forty-one-page single-spaced First Response, and an eighty-two-page Second Response, Lopez has put more than a few words on paper. Nonetheless, the conglomeration of those words does not plausibly establish that the Leving Defendants acted under color of state law, or that they did or failed to do something that violated Lopez's federal and state constitutional and statutory rights. The Leving Defendants thus ask the Court to dismiss Counts I through IV and Count VI as against them.

Wherefore, the Defendants, Michael Ochoa, James Hagler and Andrey Filipowicz, respectfully move this Court to dismiss Kimberly Sue Lopez's Complaint for Violation of

Constitutional Rights pursuant to Federal Rules of Civil Procedure 12(b)(1) and (b)(6), and to grant such further relief as the Court may deem just.

Dated: April 7 2025.

Respectfully Submitted:

By: /s/ Daniel B. Meyer
Counsel for Michael Ochoa, James Hagler and Andrey Filipowicz

Daniel B. Meyer
Meyer Law Group LLC
30 North LaSalle Street
Suite 1410
Chicago, Illinois 60602
T: 312.763.6222
E: dmeyer@meyerlex.com

## CERTIFICATE OF SERVICE

      I, Daniel B. Meyer, certify that on April 7 2025, I caused the foregoing to be filed with the Clerk of the United States District Court for the Northern District of Illinois, a copy of which will be served on the following counsel through the Court's CM/ECF system:

| Plaintiff *Pro Se*<br><br>Kimberly Sue Lopez<br>16036 84th Place<br>Tinley Park, Illinois 60487<br>E: kslopez777@gmail.com | Counsel for Cook County, Marquita Webster and Gretchen Peterson<br><br>Megan Honingford<br>Cook County State's Attorney's Office<br>500 Richard J. Daley Center<br>Chicago, Illinois 60602<br>E: megan.honingford@cookcountysao.org |
|---|---|
| Counsel for The Honorables Joan Kubalanza, Michael B. Hyman, Sanjay T. Tailor, Carl A. Walker, Doretha R. Jackson, Bernadette Barrett, Cynthia A. Grant, Parichehr Mollakarimi, Katherine Wiewiora-Kerns, and Patricia Saviano<br><br>Marci L. Sahinoglu<br>Office of the Illinois Attorney General<br>115 South LaSalle Street<br>27th Floor<br>Chicago, Illinois 60603<br>E: marci.sahinoglu@ilag.gov | Counsel for Kelly A. Moore<br><br>David A. Sorensen<br>Law Office of Stacy Bert Walker<br>151 North Franklin Street<br>15th Floor<br>Chicago, Illinois 60606<br>E: david.sorensen@cna.com |
| Counsel for Brittany Stevenson and Jaclyn Antoniolli<br><br>Michael J. Progar *and*<br>Matthew Chinski<br>Progar Law Group LLC<br>200 West Adams Street<br>Suite 2220<br>Chicago, Illinois 60606<br>E: mjp@progarlaw.com<br>E: mlc@progarlaw.com | Counsel to Raed Shalabi (*Pro Se*), Naseem Latif and Fatima Abuzerr<br><br>Raed Shalabi<br>Law Office of Raed Shalabi, Ltd.<br>15127 South 73rd Avenue<br>Suite A1<br>Orland Park, Illinois 60462<br>E: raedshalabi@yahoo.com |
| Counsel for David Finn<br><br>Kevin M. Bugos<br>Lauren Reyes<br>Smith Blake Hill LLC | Counsel for Felicia Muhammad<br><br>Jonathan Blakley *and*<br>Cristina Mares<br>Gordon Rees Mansukhani LLP |

| | |
|---|---|
| 20 North Clark Street<br>Suite 1700<br>Chicago, Illinois 60602<br>E: kbugos@sbh-law.com<br>E: lreyes@sbh-law.com | One North Wacker Drive<br>Suite 1600<br>Chicago, Illinois 60606<br>E: jblakley@grsm.com<br>E: cmares@grsm.com |
| Counsel to Russell Knight<br><br>James Dore<br>Dore Law Offices LLC<br>6232 North Pulaski Road<br>Suite 300<br>Chicago, Illinois 60646<br>E: james@dorelawoffices.com | Counsel to Carli Labraco<br><br>John A. O'Donnell Jr.<br>Michael J. Hennig<br>Luke J. Sawicki<br>Nikita I. Dodda<br>Cassiday Schade LLP<br>222 West Adams Street<br>Suite 2900<br>E: jodonnelljr@cassiday.com<br>E: mhennig@cassiday.com<br>E: lsawicki@cassiday.com<br>E: ndodda@cassiday.com |
| Counsel to Steven Marshall *Pro Se*<br><br>Steven A. Marshall<br>12413 South Harlem Avenue<br>Suite 1SW<br>Palos Heights, Illinois 60463<br>E: steven@marshall-lawllc.com | Counsel to Sarah Nolan *Pro Se*<br><br>Sarah A. Nolan<br>115255 South 94th Avenue<br>Suite 500<br>Orland Park, Illinois 60462<br>E: nolan@suburbanlawgroup.com |
| Counsel to Douglas W. Vasalakos<br><br>No Appearance | |

By:     /s/ Daniel B. Meyer
        Daniel B. Meyer

Daniel B. Meyer
Meyer Law Group LLC
30 North LaSalle Street
Suite 1410
Chicago, Illinois 60602
T – 312.265.0565
E – dmeyer@meyerlex.com