**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| KIMBERLY SUE LOPEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 24 C 13340 |
| | ) | |
| JOAN KUBALANZA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Plaintiff Kimberly Sue Lopez has been embroiled in Illinois state child custody proceedings since 2011. These proceedings have resulted in her losing contact with her daughter B.P.L.A., child support obligations, and a contempt order for failing to pay child support.

Ms. Lopez has filed a *pro se* suit against multiple actors involved in these proceedings, including: three Circuit Court of Cook County judges (Judges Joan Kubalanza, Doretha Jackson, and Bernadette Barrett), three Illinois Appellate Court Justices (Justices Sanjay Tailor, Michael Hyman, and Carl Walker), three guardians ad litem (Kelly Moore, Steven Marshall, and Carli Lobraco), four court clerks (Gretchen Peterson, Marquita Webster, Parichehr Mollakarimi, and Cynthia Grant), two court reporters (Patricia Saviano and Katherine Wiewiora-Kerns), five court-appointed reunification therapists (Jaclyn Antoniolli, Brittany Stevenson, Felicia Muhammad, David Finn, and Douglas Vasalakos), Cook County itself, the alleged father of B.P.L.A. (Naseem Latif), the alleged father's counsel (Raed Shalabi and Fatima Abuzerr), and

Ms. Lopez's former counsel (Sarah Nolan, Russell Knight, James Hagler, Andrey Flipowicz, and Michael Ochoa).

Ms. Lopez contends these actors either "failed to intervene" to protect her rights or "conspired together to violate" those rights. *See* Compl. ¶¶ 1–6. She alleges the defendants violated her: (1) Fourteenth Amendment due process and equal protection rights, (2) First Amendment right to access the courts, (3) Sixth Amendment right to counsel, (4) Eighth Amendment right against excessive fines, and (5) rights under the Americans with Disabilities Act (ADA).

Most of the defendants have filed motions to dismiss the complaint.[1] For the reasons stated below, the Court dismisses the suit on abstention grounds.

## Background

At the motion to dismiss stage, the Court accepts all well-pled factual allegations as true. *Ashcroft v. al-Kidd*, 563 U.S. 731, 734 (2011). Kimberly Sue Lopez is the biological mother of B.P.L.A. Since 2011, Ms. Lopez has been involved in a custody dispute over B.P.L.A. with Naseem Latif.

### A.    Custody proceedings

The issues relevant to this lawsuit came to a head on December 24, 2020, when court-appointed guardian ad litem Kelly Moore filed an emergency motion on behalf of B.P.L.A. to suspend Ms. Lopez's parenting time. That same day, Judge Joan Kubalanza granted an Order for Possession of Child in favor of Mr. Latif.[2]

---

[1] Douglas Vasalakos is the only defendant who has not moved to dismiss. He has not filed an appearance in this case.

[2] Although not every state-court order relevant to this dispute is referenced in the complaint, a district court may "[t]ake[] judicial notice of matters of public record." *Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012). Orders reflected by "judicially

Ms. Lopez was ordered to attend reunification therapy in the hopes of reestablishing parenting time with B.P.L.A. She was originally ordered to have reunification therapy with court-appointed therapist Brittany Stevenson. Ms. Stevenson, however, informed Ms. Lopez that she did not have any immediate appointments available. She suggested Ms. Lopez instead work with court-appointed therapist Jaclyn Antoniolli.

Reunification therapy began in February 2021 with Ms. Antoniolli. Ms. Lopez alleges several issues with the therapy process. She contends Ms. Antoniolli made derogatory remarks to her, including calling her "ghetto, intimidating, and a lady of the night." Compl. ¶ 14(d). She also alleges that Ms. Antoniolli advised B.P.L.A. to "hang up on your mom if you feel uncomfortable." *Id.* And when Ms. Lopez would ask about Ms. Antoniolli's "plan of care," Ms. Antoniolli would respond that she did not have one. *Id.*

According to Ms. Lopez, reunification therapy continued into July 2021 "without any progress." *Id.* Around that time, Ms. Lopez contacted the Illinois Department of Professional Regulations to inquire about Ms. Antoniolli's therapy license. She was told that Ms. Antoniolli did not have a license. Ms. Lopez notified her then-counsel and Steven Marshall—another court appointed guardian ad litem—of this information, but "nothing was done." *Id.* Ms. Lopez decided to end reunification therapy with Ms. Antoniolli in July 2021.

---

noticeable" "public court documents" can be considered when ruling on a motion to dismiss because they are "readily ascertainable from the public court record" and their existence is "not subject to reasonable dispute." *See id.* at 774 (citing *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994)).

On August 11, 2021, Judge Doretha Jackson—who had these proceedings transferred to her after Judge Kubalanza retired—entered an order allowing for a parental evaluation of Ms. Lopez by Dr. David Finn.  This evaluation was faulty, according to Ms. Lopez, because Dr. Finn failed to include specifics on Mr. Latif's misconduct in his report, including an alleged verbal altercation and bribery attempt.  In response, Ms. Lopez, through her counsel, filed a motion for a mental evaluation of Mr. Latif.  Ms. Lopez alleges that Judge Jackson failed to rule on this motion.

Ms. Lopez, Mr. Latif, and B.P.L.A. were once again ordered to participate in reunification therapy in September 2022, this time with court-appointed therapist Felicia Muhammad.  Ms. Lopez alleges that Ms. Muhammad agreed that B.P.L.A. was being abused but failed to notify the proper authorities.

In January 2023, Ms. Lopez went to B.P.L.A.'s school in an attempt to see her. In response, Mr. Latif petitioned for an order of protection.  Judge Jackson granted the motion after a hearing on February 3, 2023, preventing Ms. Lopez from having further contact with B.P.L.A.'s school.  Ms. Lopez alleges that she was not present at the hearing and that her attorneys did not notify her of the hearing.

Ms. Lopez fired her attorneys after the hearing.  These attorneys subsequently moved to withdraw as Ms. Lopez's counsel on March 27, 2023.  The motion was granted the same day.

Reunification therapy again continued in 2023 with another reunification therapist—Dr. Douglas Vasalakos.  Ms. Lopez alleges that therapy with Dr. Vasalakos ended abruptly after guardian ad litem Mr. Marshall "lied on the record stating [Ms. Lopez] 'stopped reunification with Dr. Vasalakos.'"  Compl. ¶ 14(f).  Judge Bernadette

Barrett—who was now assigned to these proceedings—allegedly ordered the end of this reunification therapy in October 2023.

It appears that the state court child custody proceedings remain ongoing.  In fact, Ms. Lopez has filed a different federal lawsuit challenging continuing child support obligations from these proceedings.  *See Lopez v. Ill. Dep't of Healthcare & Fam. Servs.*, No. 25 C 457 (N.D. Ill.) (Tharp, J.).[3]

## B.    Attempts to appeal

Starting in November 2023, Ms. Lopez made several attempts to appeal the underlying decisions in these child custody proceedings.  She first contacted Circuit Court of Cook County court reporters Patricia Saviano and Katherine Wiewiora-Kerns for court transcripts.  Ms. Lopez was told in at least one email from Ms. Saviano that sought-after transcripts could not be found and that it was "possible [Ms. Lopez's] case was not on the record" that day.  Pl.'s Resp. in Opp'n to all Defs., Ex. 14.  She alleges this failure to record relevant proceedings prevented her from perfecting her appeals.

She next contacted the Cook County Clerk Gretchen Peterson regarding how to navigate the appellate process.  Ms. Lopez alleges that her emails and calls to the Cook

---

[3] In her brief, Ms. Lopez "asserts there are no ongoing state proceedings occurring." Pl.'s Resp. in Opp'n to All Defs. at 28.  She provides no support for this contention, which is contradicted by her continuing challenges to state-imposed child support obligations.  *See Wereko v. Rosen*, No. 22 C 2177, 2023 WL 2241989, at *10 (N.D. Ill. Feb. 27, 2023) (citing *J.B. v. Woodard*, 997 F.3d 714, 722 (7th Cir. 2021)) (noting the "enforcement and oversight of child support" is an "ongoing" state-court proceeding). Because the ongoing nature of the state child custody proceedings implicates this Court's subject matter jurisdiction (as explained below), the Court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists."  *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999) (citation omitted).

County Clerk's Office were ignored.

Finally, she contacted Illinois Appellate Court Clerk Parichehr Mollakarimi regarding the appellate process.  Ms. Mollakarimi informed Ms. Lopez that a copy of the Circuit Court's mandate was required to allow for an appeal, and that mandate could only be acquired from the Circuit Court.  It does not appear that Ms. Lopez was able to obtain the mandates she sought.

On February 16, 2024, Ms. Lopez filed a petition for mandamus in the Illinois Appellate Court, First District.  The court denied the petition.  According to Ms. Lopez, the appellate court "denied her request without cause."  Compl. ¶ 14(c).

## C.    Contempt

On April 30, 2024, Judge Barrett issued an order of contempt against Ms. Lopez for failure to pay child support.  She was taken into custody on May 23, 2024, with a purge amount set at $3,500.  The amount was confirmed by an email sent to Ms. Lopez by Cook County Clerk Marquita Webster on May 30, 2024.

In response, Ms. Lopez filed an emergency motion to stay her commitment pending appeal.  The appellate court granted an emergency stay on June 20, 2024. The appeal, however, was dismissed on July 25, 2024, for want of prosecution.  The appellate court panel that dismissed that appeal included Justices Sharon Johnson, Michael Hyman, and Sanjay Tailor.

## D.    Requests for accommodations

Throughout the state court proceedings, Ms. Lopez alleges, she requested accommodations for disabilities.  Ms. Lopez says she is diagnosed with Autism Spectrum Disorder, Attention Deficit/Hyperactivity Disorder-Combined Type, and

Complex Post-Traumatic Stress Disorder. She alleges that Judge Barrett and Illinois Supreme Court Clerk Cynthia Grant ignored requests that would accommodate these disabilities.

## E.    This litigation

Ms. Lopez filed this lawsuit *pro se* on December 27, 2024, against a number of the actors involved in the state court proceedings. Specifically, she brought suit against twenty-nine defendants: three Circuit Court of Cook County judges (Judges Joan Kubalanza, Doretha Jackson, and Bernadette Barrett), three Illinois Appellate Court Justices (Justices Sanjay Tailor, Michael Hyman, and Carl Walker), three guardians ad litem (Kelly Moore, Steven Marshall, and Carli Lobraco), four court clerks (Gretchen Peterson, Marquita Webster, Parichehr Mollakarimi, and Cynthia Grant), two court reporters (Patricia Saviano and Katherine Wiewiora-Kerns), five court-appointed reunification therapists (Jaclyn Antoniolli, Brittany Stevenson, Felicia Muhammad, David Finn, and Douglas Vasalakos), Cook County itself, the alleged father of B.P.L.A. (Naseem Latif), the alleged father's counsel (Raed Shalabi and Fatima Abuzerr), and Ms. Lopez's former counsel (Sarah Nolan, Russell Knight, James Hagler, Andrey Flipowicz, and Michael Ochoa).

In her complaint, Ms. Lopez alleges these defendants either "failed to intervene" to protect her rights or "conspired together to violate" those rights. *See* Compl. ¶¶ 1–6. She contends the defendants violated her: (1) Fourteenth Amendment due process and equal protection rights, (2) First Amendment right to access the courts, (3) Sixth Amendment right to counsel, (4) Eighth Amendment right against excessive fines, and (5) rights under the ADA.

Most of the defendants have filed motions to dismiss the complaint. Ms. Lopez initially filed her response on March 14, 2025. Two days before the defendants' replies to this response were due, however, Ms. Lopez filed another response. She asserted that the first response was an "earlier partial filing" that was "superseded" by the second one and requested that the first response "be disregarded for purposes of ruling." *See* Pl.'s Notice of Clarification & Procedural Compliance, Dkt. 119 at 2.

Many of the motions to dismiss contend that any newly alleged facts in the second response should be disregarded. It is true that a "complaint may not be amended by the briefs in opposition to a motion to dismiss." *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012). But a court may consider "facts alleged by a plaintiff in a brief in opposition to a motion to dismiss" when "evaluating the sufficiency of a complaint so long as they are consistent of the allegations in the complaint." *Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015) (citation omitted). And the Court must construe *pro se* filings "liberally." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The Court thus accepts Ms. Lopez's assertion that the second response supersedes the first and will consider the allegations made in this response when analyzing the defendants' motions to dismiss.

## Discussion

The Court's jurisdiction "is the first question in every case." *Illinois v. City of Chicago*, 137 F.3d 474, 478 (7th Cir. 1998). "Because federal courts possess limited jurisdiction, and 'jurisdiction is power to declare the law,' the first step in any federal lawsuit is ensuring the district court possesses authority to adjudicate the dispute—in

8

short, that it has jurisdiction over the subject matter." *Boim v. Am. Muslims for Palestine*, 9 F.4th 545, 550 (7th Cir. 2021) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)). If a federal court determines that it lacks subject matter jurisdiction, it only has the power to "announc[e]" the jurisdictional defect and "dismiss[] the cause." *Steel Co.*, 523 U.S. at 94 (quoting *Ex parte McCardle*, 74 U.S. 506, 514 (1868)).

The defendants assert four doctrines that implicate this Court's subject matter jurisdiction: the *Rooker-Feldman* doctrine, *Younger* abstention, the domestic relations exception, and comity abstention. The Court considers each in turn.

## A. *Rooker-Feldman* doctrine

"The *Rooker-Feldman* doctrine recognizes that Congress has not 'authorized district courts to exercise appellate jurisdiction over state-court judgments.'" *Gilbank v. Wood Cnty. Dep't of Hum. Servs.*, 111 F.4th 754, 765 (7th Cir. 2024) (Hamilton, J.) (en banc) (quoting *Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 644 n.3 (2002)) (cleaned up). *Rooker-Feldman* requires district courts to "disclaim jurisdiction only in 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Id.* at 766 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

The Seventh Circuit has articulated this test into four elements that must be met for *Rooker-Feldman* to "block[] federal jurisdiction":

> *First*, the federal plaintiff must have been a state-court loser. *Second*, the state-court judgment must have become final before the federal proceedings began. *Third*, the state-court judgment must have caused the alleged injury underlying the federal claim. *Fourth*, the claim must

invite the federal district court to review and reject the state-court judgment.

*Id.* The court has also added a fifth element as a "safety valve" exception to the doctrine: "*Rooker-Feldman* does not apply to bar jurisdiction over a plaintiff's federal claim if she did not have a reasonable opportunity to raise her federal issues in the state courts." *Id.*

Rather than analyze these elements for each of Ms. Lopez's claims, the defendants instead argue that her claims "are inextricably intertwined with state court determinations and thus are . . . barred by *Rooker-Feldman*." *See* State Defs.' Reply in Supp. of their Mot. to Dismiss at 6. An *en banc* Seventh Circuit expressly rejected this type of overarching analysis in *Gilbank v. Wood County Department of Human Services*: "All judges agree here that the 'inextricably intertwined' language is not useful in analyzing questions under *Rooker-Feldman*." *Gilbank*, 111 F.4th at 767 n.5 (Hamilton, J.). And since *Gilbank*, the Seventh Circuit has repeatedly admonished district judges who rely on this "inextricably intertwined" standard. *See, e.g.*, *Motykie v. Motykie*, No. 24-2676, 2025 WL 1111667, at *1 (7th Cir. Apr. 15, 2025) (per curiam) ("The district court's decision also references the 'inextricably intertwined with state court proceedings' standard . . . which this court agreed should no longer be relied upon."); *Wang v. City of Indianapolis*, No. 24-2664, 2025 WL 1000158, at *3 (7th Cir. Apr. 3, 2025) (per curiam) ("[C]ontrary to the district court's inquiry here, *Gilbank* disapproved of any assessment of whether federal claims are 'inextricably intertwined' with a state court judgment."). The Court therefore solely relies on the element-based analysis approved by the Seventh Circuit when considering whether Ms. Lopez's claims are barred by the *Rooker-Feldman* doctrine.

### 1.     Lost in state court

The first element requires a federal plaintiff to have "lost" in state-court proceedings.  It is undisputed that Ms. Lopez suffered some losses.  The state-court proceedings resulted in an order denying her custody over B.P.L.A. as well as a contempt order.  Although Ms. Lopez questions the validity of these orders, it does not change the fact that she at least nominally lost in state court.

### 2.     Final state-court judgment

The second element requires that the state-court judgment complained of is final. It appears both the custody order entered on December 24, 2020 and the contempt order entered on April 30, 2024 are final orders.

### 3.     State-court judgment caused the alleged injury

"The third element of the *Rooker-Feldman* doctrine asks whether the state-court judgments caused the alleged injury underlying the claim." *Gilbank*, 111 F.4th at 766 (Hamilton, J.).  *Rooker-Feldman* bars claims only when "the state-court judgment itself caused the alleged injury underlying the claim." *Id.*  "[C]laims based on injuries that are 'independent' of the state-court judgment (i.e., injuries that were not caused by that judgment) are not barred." *Id.* (quoting *Exxon Mobil Corp.*, 544 U.S. at 284).

The paradigmatic example of an independent injury is one that occurs prior to a state-court judgment.  "Where . . . an injury was complete before the state-court judgment was rendered, the judgment could not have caused the injury, so a claim based on that injury is independent." *Id.* at 767.  *Rooker-Feldman*'s "injury element" thus "hinges on whether the federal claim alleges an injury 'caused by the state court judgment' or 'an independent prior injury that the state court failed to remedy.'" *Id.*

(citation omitted).

The Court reviews each of Ms. Lopez's claims to determine if the state-court judgments depriving her of custody over B.P.L.A. and holding her in contempt for failing to pay child support caused her alleged injuries underlying each claim.

### a. Fourteenth Amendment

First, Ms. Lopez alleges the defendants violated her Fourteenth Amendment procedural and substantive due process rights, as well as her rights under the Equal Protection Clause, by "conducting unlawful and biased judicial proceedings without fairness, impartiality, and proper procedural safeguards." Compl. ¶ 17. According to Ms. Lopez, this resulted in her being denied the "fundamental right" of a parent "to oversee the care, custody, and control of the child." *Id.* ¶ 18 (citing *Troxel v. Granville*, 530 U.S. 57, 66 (2000)). She further alleges these violations caused her "damages, including but not limited to, emotional and physical distress, reputational harm, and financial losses related to loss of employment." *Id.* ¶ 20.

The Court concludes that these cited injuries are solely caused by the state-court judgments. The harm caused by biased judicial proceedings occurs only if the proceedings result in an unfavorable ruling. No matter how biased the proceedings are, there would be no harm done to Ms. Lopez if she had won in the custody or contempt proceedings, as she would have retained both her finances and her right to care for B.P.L.A. *See Gilbank*, 111 F.4th at 768 (Hamilton, J.) (concluding that the plaintiff's "procedural due process claim," which alleged "that she did not receive notice of the temporary physical custody hearing, satisfie[d] the third element because the failure of notice would have been harmless if the . . . hearing had gone her way").

12

Ms. Lopez's further allegations in her brief only bolster this conclusion.  She argues that her due process claims present independent injuries because they involve allegations of "[f]raudulent representations to the court" by the defendants, "[s]ystematic obstruction of access to court records, transcripts, and appeals, violating [Ms. Lopez]'s procedural due process rights" and "[r]etaliatory, unconstitutional contempt proceedings lacking due process safeguards."  Pl.'s Resp. in Opp'n to All Defs. at 26.  But these allegations of obstruction and retaliation matter only if they result in unfavorable state-court judgments.  If Ms. Lopez had won in these state-court proceedings, there would be no harm caused by the defendants' allegedly false statements, obstruction, and retaliation.  The false statements would have been ineffective, the obstruction meaningless, and the retaliatory contempt proceedings would not have occurred.  It is thus the state-court judgments that have solely caused Ms. Lopez's Fourteenth Amendment injuries.  *See Gilbank*, 111 F.4th at 768 (Hamilton, J.) (noting that the plaintiff's claim that "fraudulent statements in state courts" violated her "procedural due process" rights were claims "based solely" on injuries caused by state-court judgments).

### b.    First Amendment

Ms. Lopez's First Amendment access-to-the-courts claim is trickier.  She contends the defendants' actions in the state-court proceedings "effectively prohibited [her] from filing any court documents, thereby infringing upon her First Amendment rights by preventing her from speaking freely and retaliating against her for engaging in protected speech."  Compl. ¶ 22.  She further alleges that her inability to access the courts caused her "harm and damages, including emotional distress, loss of reputation, and financial losses due to the inability to defend herself adequately in court

proceedings." *Id.* ¶ 24.

Some of these alleged injuries do appear to be caused by the state-court judgments. The financial losses Ms. Lopez suffered due to an alleged inability to defend herself, for example, are directly caused by the state-court judgments imposing financial obligations onto her, such as the contempt order.

But the fact that an access-to-the-courts claim is grounded in the First Amendment means that her injury is not just financial. The inability to engage in First Amendment protected speech is a harm in itself. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) (recognizing "the abridgment of free speech" is a "harm[] specified by the Constitution itself"). And the harm is complete the moment protected speech is stifled. *See ACLU v. Alvarez*, 679 F.3d 583, 589 (7th Cir. 2012) ("[L]oss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). In other words, the result of the state-court proceedings does not impact the First Amendment injury of an access-to-the-courts claim—the inability to defend oneself freely in court with protected speech is itself a harm. It is thus at least arguable that some of the alleged First Amendment injury Ms. Lopez cites was not caused by any state-court judgment, but was complete the moment she was allegedly unable to adequately make her case in court.

The Court is aware that there are unpublished Seventh Circuit cases that have dismissed First Amendment access-to-court claims under the *Rooker-Feldman* doctrine. *See Gakuba v. Maher*, No. 22-3267, 2023 WL 3641712, at *1 (7th Cir. May 25, 2023); *Brackman v. Indiana*, 93 Fed. App'x 989, 992 (7th Cir. 2004). Yet these cases include no analysis regarding whether the alleged First Amendment injury was caused by a

state-court judgment. The Court is not persuaded their analyses remain valid post-*Gilbank*. The Court therefore finds Ms. Lopez's First Amendment access-to-the-courts claim is not barred by *Rooker-Feldman*.

### c. Sixth Amendment

Next, Ms. Lopez alleges that the defendants violated her Sixth Amendment right to counsel "by improperly finding her in indirect . . . contempt without ensuring her access to legal representation." Compl. ¶ 26. This allegedly caused her "emotional and physical distress, as well as a compromised ability to defend herself effectively in judicial proceedings." *Id.* ¶ 28.

The allegations say it all. These alleged injuries were caused by the state court's "improper[] finding" of contempt. *Id.* ¶ 26. They are therefore caused by the state court's contempt judgment.

### d. Eighth Amendment

The allegations around Ms. Lopez's Eighth Amendment claim are somewhat general. She alleges that the "[d]efendants, acting under color of state law, imposed excessive fines and penalties." *Id.* ¶ 30. It appears she is referring to the imposition of the contempt order that required her to "post bond of $3,500." *Id.* ¶ 14(e). According to Ms. Lopez, this order resulted in the "loss of liberty, reputational harm, emotional distress, financial hardship, and other damages." *Id.* ¶ 30.

These alleged injuries were also caused by state-court judgments. Ms. Lopez would not have suffered any alleged excessive fine or loss of liberty if she had won in her state-court contempt proceedings. It was the imposition of contempt by court order that resulted in her alleged Eighth Amendment injuries.

15

### e. ADA

Finally, Ms. Lopez alleges the defendants violated the ADA when they denied her "reasonable accommodations" despite "multiple requests." *Id.* ¶ 42. Her brief supplements these allegations by noting she has been diagnosed with Autism Spectrum Disorder, Attention-Deficit/Hyperactivity Disorder-Combined Type, and Complex Post-Traumatic Stress Disorder. Pl.'s Resp. in Opp'n to all Defs. at 62. She further alleges that "she requested reasonable accommodations, such as extended time, breaks during proceedings, a supportive presence, the option to appear remotely, and other procedural adjustments necessary to manage her disabilities and participate fully." *Id.* She contends that the denial of these accommodations made her "unable to effectively communicate, object to false statements made in court, or adequately represent herself." *Id.* This allegedly caused her "significant emotional distress, loss of reputation, and financial hardship due to the inability to defend herself adequately in court proceedings." Compl. ¶ 43.

These allegations also involve injuries caused by the state-court judgments. Because the allegations suggest the lack of ADA accommodations caused her to be unable to defend herself in court, the resulting injuries are only caused by the state-court judgments. It is thus the state-court judgments that are the true cause of these injuries.

### 4. Review and reject state-court judgments

The fourth element considers whether the plaintiff "invite[s] the federal district court to review and reject the state-court judgment." *Gilbank*, 111 F.4th at 766 (Hamilton, J.). A majority of the Seventh Circuit in *Gilbank* held that a plaintiff asks a

district court to "[r]eview and reject" a state-court judgment only when the plaintiff "asks a federal court to 'overturn' or 'undo' the state court judgment." *Id.* at 792 (Kirsch, J.) (quoting *Exxon Mobil*, 544 U.S. at 284). The "focus" for the "review and reject" element is thus on the "relief sought": *Rooker-Feldman*'s "core focus is on *what* the plaintiff asks the federal court to do." *Id.* at 792–93.

Ms. Lopez requests wide-ranging relief for her alleged injuries, including: compensatory damages, punitive damages, attorneys' fees and costs, declaratory relief stating the defendants violated her constitutional rights, and injunctive relief in the form of an "order directing the immediate return of [her] minor child, B.P.L.A." Compl. at 18.

For the claims that have injuries caused by the state-court judgments, Ms. Lopez's requested injunctive relief is undoubtedly improper under *Rooker-Feldman*. That requested relief asks the Court to entirely overturn the state court's custody judgment. Ms. Lopez appears to recognize this, as she solely references her requests for damages and declaratory relief in her response to the defendants' *Rooker-Feldman* arguments and concedes that the injunctive relief requested would be "complicated by *Rooker-Feldman*." Pl.'s Resp. in Opp'n to all Defs. at 27–28, 54.

The Court also concludes that any damages sought based on injuries caused by the state-court contempt order would be barred by *Rooker-Feldman*. The Seventh Circuit in *Gilbank* cautioned against applying *Rooker-Feldman*'s bar to damages claims, emphasizing that "awarding damages usually does not affect a state court judgment not sounding in monetary terms." *Gilbank*, 111 F.4th at 792 (Kirsch, J.). Still, the court noted that "in a case where the state-court judgment sounded in monetary relief, a plaintiff repairing to federal court pursuing refund or adjustment of the sum assessed

against her could be seeking review and rejection of that judgment because the relief sought would nullify or modify the judgment." *Id.* at 795.

The court cited *Bauer v. Koester*, 951 F.3d 863 (7th Cir. 2020) (per curiam), as an example of when a plaintiff's request for damages seeks to nullify a state-court judgment. In *Bauer*, the state court "issued a monetary judgment against the plaintiffs who then, in federal court, sought actual and punitive damages for alleged constitutional violations in that proceeding." *Gilbank*, 111 F.4th at 795 (Kirsch, J.) (citing *Bauer*, 951 F.3d at 865–66). "Though the plaintiffs only sought damages," the claim was barred by *Rooker-Feldman* "because awarding such damages would refund the money assessed against them and thereby void the judgment." *Id.* at 795.

*Rooker-Feldman* thus bars Ms. Lopez's request for damages for alleged injuries caused by the state-court contempt order, as the contempt order imposed a fine of $3,500. Allowing her to obtain damages based on the imposition of that fine from the defendants who allegedly "conspired" to impose the fine would nullify it, rendering it void. That is akin to this Court overturning the state-court contempt judgment, which is barred by *Rooker-Feldman*. This mostly implicates Ms. Lopez's Sixth Amendment and Eighth Amendment claims for damages, which both revolve around the contempt order.

Any of Ms. Lopez's claims for damages for injuries caused by the state-court custody judgement, however, are not barred by *Rooker-Feldman*. The Seventh Circuit in *Gilbank* expressly held that a damages suit "cannot and will not modify" a "custody judgment." *Id.* at 791. Although a finding that the defendants are liable for damages based on actions that led to the custody judgment "might result in a federal court frowning upon the state court's conclusions," it will not effectively undo or overturn the

state court's judgment.  *Id.*  The state court's custody judgment will remain unaffected by any monetary relief this Court might grant.

Nor is the declaratory relief Ms. Lopez seeks barred by *Rooker-Feldman*. Nothing about declaring the defendants' actions violated Ms. Lopez's constitutional rights would overturn or undo the state-court custody or contempt judgments.  Again, although such a declaration certainly would frown down upon those judgments, it would not reverse them.

### 5.   Reasonable opportunity to litigate claims

For Ms. Lopez's claims that meet the four *Rooker-Feldman* elements, the Court considers the narrow "safety valve" exception.  "[I]f a plaintiff lacked a reasonable opportunity to litigate an issue in state court, then the claim may proceed in federal court."  *Id.* at 778 (Hamilton, J.).  A federal court may consider these claims if "factors independent of the actions of the opposing parties, such as state-court procedural barriers, prevented the plaintiff from asserting her rights in state court."  *Id.* (cleaned up). This exception is exceedingly narrow.  "[S]tate law must have effectively precluded raising the issue in state court" for the safety valve to apply.  *Id.* (cleaned up).

Ms. Lopez has not plausibly alleged that state law effectively precluded her from raising her constitutional and ADA claims.  As the Seventh Circuit has recognized, "[s]tate courts can and do consider constitutional arguments in custody cases."  *E.A. v. Gardner*, 929 F.3d 922, 925 (7th Cir. 2019) (citing *In re Marriage of Bates*, 212 Ill. 2d 489, 508, 819 N.E.2d 714, 7124 (2004) and *In re Andrea F.*, 208 Ill. 2d 148, 165, 802 N.E.2d 782, 792 (2003)).  "[I]f the constitutional questions presented to the federal court actually arose in the state-court proceedings, 'it was the province and duty of the

state courts to decide them,' and the injured party's recourse is to 'an appropriate and timely appellate proceeding' in the state courts and, if necessary, in the Supreme Court of the United States." *Gilbank*, 111 F.4th at 778 (Hamilton, J.) (quoting *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413, 414 (1923)).

Nor is the Court persuaded that Ms. Lopez was unable to raise her disability accommodation issues in state court. As her attached emails demonstrate, the Illinois state-court system provides an "American with Disabilities Act Accommodation Request Form," which Ms. Lopez could (and did) use to request accommodations. Resp. in Opp'n to All Defs., Ex. 11 at 3–11.

Ms. Lopez may feel that "judge[s] denying all of [her] requests summarily" made it meaningless to further pursue the issues she raises in this Court. *See* Pl.'s Resp. in Opp'n to All Defs. at 53. But there is "no *Rooker-Feldman* exception for egregious errors or serious injuries." *Gilbank*, 111 F.4th at 780 (Hamilton, J.). "If the state-court decision was wrong, no court of the United States other than [the Supreme Court]" can "entertain a proceeding to reverse or modify the state-court judgment." *Id.* (quoting *Rooker*, 263 U.S. at 415–16) (cleaned up). The Court concludes that the safety valve exception to *Rooker-Feldman* does not apply to Ms. Lopez's claims.

### 6. Fraud exception

Lastly, Ms. Lopez argues that her fraud allegations prevent *Rooker-Feldman* from blocking her claims. She contends that "[f]ederal courts explicitly recognize an 'extrinsic fraud' exception to *Rooker-Feldman*, under which claims alleging fraud or misconduct independent from the merits of the judgment are not barred." Pl.'s Resp. in Opp'n to All Defs. at 26.

20

The Seventh Circuit has expressly rejected the existence of this "fraud exception." There is no "exception to *Rooker-Feldman* based on a federal plaintiff's allegation that her state-court opponents or others misled or defrauded the state court into causing her injury." *Gilbank*, 111 F.4th at 785 (Hamilton, J.). Nor do Ms. Lopez's allegations that the state-court actors themselves were biased or impartial avoid *Rooker-Feldman*'s jurisdictional bar. "*Rooker-Feldman* applies even where the federal plaintiff alleges that the state courts that injured her were corrupt." *Id.* at 781.

If such exceptions existed, any plaintiff could avoid *Rooker-Feldman*'s jurisdictional limitations by simply alleging fraud or corruption. *Id.* at 785 ("If a state-court loser can challenge a state-court judgment in federal court merely by alleging fraud, that exception could too easily swallow the rule."). Limits on this a federal court's jurisdiction cannot be so easily avoided. "The reason a litigant gives for contesting the state court's decision cannot endow a federal district court with jurisdiction that it does not otherwise have." *Id.* (cleaned up). Ms. Lopez's allegations of fraud and corruption during her state-court proceedings "do not change the [*Rooker-Feldman*] calculus." *Id.* (citation omitted).

\*       \*       \*

The Court concludes that it lacks subject matter jurisdiction over the following claims because of *Rooker-Feldman*'s bar: the Fourteenth Amendment due process and equal protection claims, the Eighth Amendment excessive fines claim, the Sixth Amendment right to counsel claim, and the ADA claim to the extent they request injunctive relief returning B.P.L.A. to Ms. Lopez's custody. The Court also lacks jurisdiction over Ms. Lopez's Sixth Amendment and Eighth Amendment claims for

damages, as they rely on injuries caused by the contempt order and seek to overturn or undo the contempt order by rendering its financial penalty void.

The Court, however, is not barred by *Rooker-Feldman* when considering: Ms. Lopez's First Amendment access-to-the-courts claim for all relief requested, as that claim involves a First Amendment injury not caused by any state-court judgment; the Fourteenth Amendment and ADA claims for damages and declaratory relief; and the Sixth Amendment and Eighth Amendment claims for declaratory relief.

## B. *Younger* abstention

"The basic principle of *Younger* abstention is that, absent extraordinary circumstances, a federal court should not interfere with pending state judicial proceedings." *Brunken v. Lance*, 807 F.2d 1325, 1330 (7th Cir. 1986). *Younger* abstention requires "federal courts to abstain from enjoining ongoing state proceedings that are (1) judicial in nature, (2) implicate important state interests, and (3) offer an adequate opportunity for review of constitutional claims, (4) so long as no extraordinary circumstances—like bias or harassment—exist which auger against abstention." *FreeEats.com, Inc. v. Indiana*, 502 F.3d 590, 596 (7th Cir. 2007) (citation omitted). Although this doctrine is usually invoked when the plaintiff requests equitable relief, the Seventh Circuit has required abstention in suits for damages when ruling on the suit would unduly interfere with or undermine ongoing state-court proceedings. *See Gakuba v. O'Brien*, 711 F.3d 751, 753 (7th Cir. 2013).

*Younger* abstention, however, "applies in only three limited categories of cases": "where federal court intervention would intrude into ongoing state criminal proceedings, into state-initiated civil enforcement proceedings akin to criminal prosecutions, or into

civil proceedings implicating a state's interest in enforcing orders and judgments of its courts." *Woodard*, 997 F.3d at 722 (citing *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72–73 (2013)).

Although a close call, the Court concludes that Ms. Lopez's custody proceedings do not fall within these narrow categories. To the Court's knowledge, the Seventh Circuit has extended *Younger* abstention to custody proceedings only when the *state* has initiated them. *See Milchtein v. Chisholm*, 880 F.3d 895, 898 (7th Cir. 2018) (noting that state-initiated "child-welfare and child-custody proceedings" fall within *Younger* abstention because it is a "civil litigation brought by the state to vindicate its policies"). This case involves a custody dispute between Ms. Lopez and Mr. Latif, both of whom are private parties. The Seventh Circuit, in fact, has expressly recognized that "none" of the limited categories where *Younger* applies "fits exactly" when a child custody proceeding is initiated by a private party. *Woodard*, 997 F.3d at 722.

The related contempt proceedings, on the other hand, could warrant abstention under *Younger*. *See Juidice v. Vail*, 430 U.S. 327, 335–36 & n.12 (1977) (applying *Younger* abstention to ongoing state civil contempt proceedings). But for *Younger* abstention to apply at all, the state-court proceedings must be "ongoing." As far as the Court can tell, the contempt proceedings Ms. Lopez complains of have concluded. The contempt order was issued in April 2024, an appeal led the appellate court to stay the order in June 2024, and the appeal was dismissed for want of prosecution in July 2024. There is no indication that these specific contempt proceedings continue over a year later. *Younger* abstention therefore does not bar the Court's consideration of any claims based on that contempt order.

C.    **Domestic relations exception**

"[T]he domestic relations exception . . . divests the federal courts of power to issue divorce, alimony, and child custody decrees."  *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992).  It is based on the understanding that state courts have a "judicial expertise" in handling domestic issues that federal courts lack.  *Id.* at 704; *Jones Brennan*, 465 F.3d 304, 307 (7th Cir. 2006) ("[S]tate courts are assumed to have developed a proficiency in [domestic relations] matters, to have procedures tailored to them, and to work closely with and even employ specialized staff not found in federal courts.").

Still, the domestic relations exception is "construed narrowly."  *Kowalski v. Boliker*, 893 F.3d 987, 995 (7th Cir. 2018).  It does not apply to *in personam* litigation that does not affect a custody determination, even if the actions complained of "occurred during a family-law proceeding."  *Id.* at 995–96.  A plaintiff's claims that her "rights in family court" were violated are not barred by this exception if the plaintiff "does not attack any application of [a state's] family law."  *Id.* at 996.

The domestic relations exception blocks Ms. Lopez's requested injunctive relief.  The Court cannot issue "[a]n order directing the immediate return of [Ms. Lopez]'s minor child, B.P.L.A."—that is akin to issuing a child custody decree.  Nor does the fact Ms. Lopez assert federal claims prevent the domestic relations exception from applying.  Despite her arguments otherwise, this exception to the Court's jurisdiction "appl[ies] to both federal-question and diversity suits."  *Kowalski*, 893 F.3d at 995.

Most of Ms. Lopez's claims and requested relief, however, do not fit within the domestic relations exception's narrow categories.  Her requests for damages based on

24

the defendants' allegedly fraudulent conduct are not barred by this exception, as they would not require this Court to issue any family-law rulings. The Court's analysis of these claims may call into question the state court's child custody proceedings, but they would not directly affect any state-court, family-law order. *See, e.g.*, *Sheetz v. Norwood*, 608 F. App'x 401, 404 (7th Cir. 2015) (noting that a plaintiff's "attempt[] to litigate misconduct that occurred *outside* the state-court proceedings," such as "the alleged failure of the defendants to report or otherwise end the alleged abuse inflicted on" a child by a parent, does not fall within the domestic relations exception even when the plaintiff refers to the state court's orders as "void," as the plaintiff "can pursue those claims without asking to set aside the state court's orders").

The same can be said for Ms. Lopez's requested declaratory relief. Although a "declaration that [the] [d]efendants' violated [Ms. Lopez]'s constitutional rights" would amount to criticism of the state-court child custody proceedings, it does not amount to a custody-type order, nor would it affect any existing order of that type.

In sum, other than any claims for injunctive relief, the Court does not find Ms. Lopez's claims fall within the domestic relations exception.

## D. Comity abstention

As the prior analysis shows, Ms. Lopez's remaining claims for damages and declaratory relief do not quite fit into any of the above doctrines. Still, the Seventh Circuit has emphasized that "[o]bserving that no abstention doctrine is an exact fit does not resolve the jurisdictional inquiry." *Woodard*, 997 F.3d at 714. Instead, a district court must consider one last abstention doctrine: comity. Comity abstention recognizes that "a federal court may, and often must, decline to exercise its jurisdiction where doing

25

so would intrude upon the independence of the state courts and their ability to resolve the cases before them." *Woodard*, 997 F.3d at 721–22 (quoting *SKS & Assocs., Inc. v. Dart*, 619 F.3d 674, 677 (7th Cir. 2010)).

The Seventh Circuit considered the applicability of comity abstention to state child custody proceedings in *J.B. v. Woodard.* In *Woodard*, the federal plaintiff had his parenting time suspended during a state-court child custody proceeding. *Id.* at 717. The plaintiff then "turned to federal court," filing a lawsuit on behalf of himself and his children alleging "violations of their First and Fourteenth Amendment rights" based on "his and his kids' right to familial association." *Id.* The "child custody dispute remained ongoing," and the plaintiff's "parenting time had not been reinstated" when he filed his federal lawsuit. *Id.* at 718–19.

The court surveyed the possibly applicable jurisdictional bars. "Start[ing] with *Younger* abstention," the court emphasized that "[t]he doctrine applies in only three limited categories of cases, none of which fit[] exactly" to the plaintiff's case. *Id.* at 722. It then moved to *Rooker-Feldman*, but also found it was not "spot on," as it was not clear whether any state-court custody order was a final judgment. *Id.* at 722–23. Finally, the "domestic-relations exception to federal jurisdiction" was "not a perfect match either" due to the "narrow range of issues" it covered. *Id.* at 723 (citation omitted).

Yet the court recognized that the animating principles underlying these doctrines were all implicated. Although the state child custody proceeding did not fit within one of *Younger*'s three abstention categories, federal jurisdiction over the plaintiff's case risked intervention into state affairs, as the proceedings "remain[ed] ongoing in the local Circuit

Court of Cook County." *Id.* And although the court could not point with certainty to any final state-court order that would preclude jurisdiction under *Rooker-Feldman*, it recognized that allegations that the defendants' "actions caused the domestic relations court to limit his parenting [were] akin to him arguing in federal court that the state court decision violate[d] his right to familial relations." *Id.* The plaintiff's case also clearly focused on "elements of the domestic relationship" even if the narrow domestic relations exception did not specifically block jurisdiction. *Id.* (quoting *Ankenbrandt*, 504 U.S. at 705–06).

The Seventh Circuit concluded that these circumstances demanded comity abstention. It recognized that "the entire design of [the plaintiff's] federal action" was "to receive a favorable federal constitutional ruling that can be used affirmatively or offensively to shape—or perhaps change—the direction and course of the state court proceedings." *Id.* The plaintiff's "requests for declaratory and injunctive relief reinforce[d] this observation," as granting that relief "would provide [the plaintiff] with an offensive tool to take to state court to challenge th[e] judge's orders." *Id.* And the same reasoning "applie[d] with equal force" to the plaintiff's "request for compensatory damages," as the plaintiff "would have to first establish a constitutional violation of his right to familial association" which he could "then use . . . to interfere with ongoing state court proceedings." *Id.* at 724. Despite no distinct abstention doctrine applying, the "threaten[ed] interference with and disruption of local family law proceedings—a robust area of law traditionally reserved for state and local government— . . . all but compel[led] the federal judiciary to stand down." *Id.* at 723. To insist on literal perfection" in any one abstention doctrine "based on allegation's in [the plaintiff's]

27

complaint . . . risk[ed] a serious federalism infringement." *Id.*

This case is analogous to *Woodard*. All of Ms. Lopez's claims seek to undo or undercut her ongoing state child custody proceedings. In arguing that the proceedings have been conducted in such a manner that her constitutional and ADA rights have been violated, Ms. Lopez hopes to achieve rulings in this Court that she can use to "offensively shape" or "change" the "direction and course of the state court proceedings." *See id.* This is most obvious with her requested injunctive relief, which essentially asks this Court to overturn the state court's custody judgment. But the reasoning "applies with equal force" to the plaintiff's request for declaratory relief and damages. *See id.* at 724. Although a declaration that the state court is violating her constitutional and ADA rights and a damages reward to compensate those violations would not necessarily require the state court to alter their proceedings, it would put pressure on it to do so.

Consider, for example, what would happen if the Court determined that the state court's imposition of contempt violated Ms. Lopez's Eighth Amendment rights. Even if the Court only declared that order unconstitutional and awarded retrospective damages for that alleged violation, the ruling would hamstring any further use of contempt as punishment for failure to pay child support in the ongoing child custody proceedings out of fear of further federal court intervention. That is an impermissible result, at least while child custody proceedings continue. The Supreme Court has recognized that a state maintains an "important interest" "in the contempt process," as it is through that process the state "vindicates the regular operation of its judicial system." *Vail*, 430 U.S. at 335. "[S]uch interference with the contempt process not only unduly interferes with

the legitimate activities of the State, but also can readily be interpreted as reflecting negatively upon the state courts' ability to enforce constitutional principles." *Id.* at 335–36 (internal citations omitted) (cleaned up). The principles of comity demand that this federal court give more respect to the ongoing state-court child custody proceedings than an adjudication of Ms. Lopez's claims would allow.

Perhaps recognizing the comity issues her complaint raises, Ms. Lopez repeatedly emphasizes in her brief that she does "not seek to alter, annul, or invalidate any state-court judgments." Pl.'s Resp. in Opp'n to All Defs. at 3. But these statements are contradicted by many of her arguments, which flatly assert "that the Illinois trial court lacked subject matter jurisdiction from the inception of the proceedings, rendering *all subsequent orders* void ab initio." *Id.* (emphasis added). These statements are also contradicted by the remedies requested in Ms. Lopez's complaint, which, as discussed above, ask this Court either to effectively overturn the state court's custody order or to issue rulings that would influence ongoing state-court proceedings.

Lastly, the fact that Ms. Lopez brings suit against several judges and court staff indicates an intent to disrupt the state-court proceedings. As other courts in this district have concluded, "the case for abstention is even stronger" when the plaintiff "name[s] [a] judge as a defendant," as it shows "a direct challenge to the legitimacy of the state court's actions." *Hadzi-Tanovic v. Johnson*, No. 20 C 3460, 2021 WL 5505541, at *6 (N.D. Ill. Nov. 24, 2021) (Tharp, J.); *see also Wereko*, 2023 WL 2241989, at *9 (Durkin, J.) (same); *Bush v. Carr*, No. 20 C 6634, 2021 WL 4552555, at *1 (N.D. Ill. Oct. 5, 2021) (Feinerman, J.) (noting that "abstention surely is warranted" when the plaintiff "sues [the] [j]udge . . . himself and asks this court to directly decide the constitutionality of the

judge's rulings and actions").  Ms. Lopez's unsupported contention that she is not challenging state-court judgments cannot overcome the readily apparent fact that the "entire design" of this federal action is to undermine those proceedings.  *See Woodard*, 997 F.3d at 723.

Of course, this Court's due respect for state-court proceedings is not unlimited. The Seventh Circuit in *Woodard* noted that a federal court may intervene in state-court proceedings if "the state courts have proven unwilling to address" a plaintiff's claims.  *Id.* at 725 (quoting *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1071 (7th Cir. 2018)); *see also Doe v. Lindell*, No. 22-1666, 2023 WL 196467, at *4 (7th Cir. Jan. 17, 2023) (same).  Yet as discussed above, Illinois courts are willing to consider constitutional claims and ADA accommodations in child custody proceedings.  *See Gardner*, 929 F.3d at 925.  The fact that Ms. Lopez did not succeed in convincing the state court of her claims' merit does not give this federal district court the right to intervene.

\*     \*     \*

The only question left is whether a stay or dismissal should be granted. "Generally, . . . staying the case, rather than an all-out dismissal of a claim, is the proper disposition where a plaintiff seeks compensatory damages."  *Woodard*, 997 F.3d at 724. But the Seventh Circuit has recognized that a stay is often "not practical" when claims are based on ongoing child custody proceedings.  *Id.* at 725.  "[S]tate court custody proceedings, or, at least oversight by the state court, will be continual until the children reach 18 years of age."  *Id.*  A district court is not required to have cases "linger for years on the federal docket" while awaiting the end of custody proceedings.  *Lindell*, 2023 WL 196467, at *4.

By the Court's calculation, B.P.L.A. is around fourteen years old.  It is not practical for this case to linger on this Court's docket for the next four years.  The Court therefore dismisses this case on abstention grounds.  *See Hadzi-Tanovic*, 2021 WL 5505541, at \*7 (dismissing case when the plaintiff alleged "her eldest child was 14 or 15 years-old" at the time of filing the lawsuit because "it [was] plain that if stayed, this case would remain pending on this Court's docket for many years before the state court's supervision ended"); *Wereko*, 2023 WL 2241989, at \*10 (dismissing case when "[t]he issues of child custody and child support . . . remain[ed] subject to state court oversight" for "the next five years").

### Conclusion

For the reasons stated above, the Court dismisses the suit on abstention grounds.  All pending motions are terminated [dkts. 73, 74, 75, 78, 80, 81, 82, 83, 85, 88, 93, 94, 98, 103].  The Clerk is directed to enter judgment stating:  Plaintiff's claims are dismissed.

Date:  August 11, 2025

_____
MATTHEW F. KENNELLY
United States District Judge